UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Rienzi & Sons, Inc.,

       Plaintiff,

– against –

I Buonatavola Sini S.R.L.,

       Defendant.

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

20-cv-5704 (ERK) (SJB)

KORMAN, *J.*:

  Plaintiff Rienzi & Sons, Inc. (Rienzi) asserts several causes of action against defendant and Italian cheesemaker I Buonatavola Sini S.R.L. (Buonatavola). This dispute arose out of Rienzi's order of a large quantity of Pecorino Romano (pecorino) cheese from Buonatavola. The First Amended Complaint (FAC) asserted causes of action for (1) breach of oral agreement, (2) damage to business reputation, (3) lost profits, (4) incidental/consequential damages, and (5) breach of written agreement in the alternative. Buonatavola moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and Rienzi cross-moves for leave to file a second amended complaint. The proposed Second Amended Complaint (SAC) removes the independent damages causes of action and instead pleads them as types of damages sought under both breach-of-contract claims. The proposed complaint

1

also adds new causes of action for (1) breach of the implied warranty of merchantability, and (2) fraudulent inducement.

For the reasons stated below, each motion is granted in part and denied in part. Rienzi may go forward with its proposed amended claims for breach of the "written agreement" and for breach of the implied warranty of merchantability. Its claims for breach of the "oral agreement" and for fraudulent inducement, on the other hand, may not proceed.

## BACKGORUND

Rienzi, a New York corporation, provides alternative accounts of its agreement with Buonatavola, an Italian company. In both alternatives, Buonatavola agreed to send over 40,000 pounds of pecorino to Rienzi; both parties understood that Rienzi would then sell the pecorino in the United States. *See* Decl. of Richard E. Freeman, Ex. 1, SAC, ¶¶ 51, 94, ECF No. 18-3. The alternatives differ, however, regarding the timing of Rienzi's payment obligation. In the first alternative, which Rienzi refers to as the "oral agreement," Rienzi was only responsible for paying Buonatavola if Rienzi could successfully resell the pecorino. SAC ¶¶ 51–54. In the second alternative, which Rienzi calls the "written agreement" or "purchase agreement," no provision specifically conditioned Rienzi's payment obligation on its successful resale of the pecorino. SAC ¶¶ 93–94.

Rienzi submitted a copy of a "deferred invoice" that Buonatavola sent Rienzi—the only writing in the record that reflects a contract between the parties. *See* Decl. of Richard E. Freeman, Ex. A, ECF No. 18-3. That invoice provides that Buonatavola sent Renzi 19,359 kilograms of pecorino on May 26, 2016 and that payment of €150,982 was due on July 26, 2016. *Id.*

Rienzi packed the pecorino under its own brand name, and, in June and July 2016, sold the cheese to a company called Wakefern. SAC ¶ 12. Wakefern then placed the cheese for sale in various Shop Rite supermarkets. SAC ¶ 13. Soon after, customers began to complain that the cheese "was of poor quality or otherwise defective," and Rienzi was forced to issue credits to the Shop Rite stores. SAC ¶ 14. In August, Wakefern demanded that Rienzi accept return of the entire lot of pecorino and refund Wakefern its purchase price. SAC ¶ 15. Rienzi complied. SAC ¶ 16.

While these events were transpiring, Renzi informed Buonatavola that the pecorino "was of poor quality, defective, and . . . otherwise unacceptable" and that Rienzi would need to return the pecorino. SAC ¶ 20. Buonatavola representative Massimiliano Sini visited Rienzi's warehouse to inspect the pecorino, confirmed that it was defective, and informed Rienzi that another representative — Pierluigi Sini — would travel to the warehouse to arrange the product's return. SAC ¶¶ 23–26. Rienzi retained the pecorino in its freezers in anticipation of Buonatavola organizing a return, but Buonatavola never attempted to follow through on its alleged promise.

SAC ¶¶ 27–29. Two and a half years later, in around February 2019, Buonatavola directed Rienzi to send a sample to a potential buyer, who declined to purchase the pecorino. SAC ¶¶ 30–33. Rienzi then sent the pecorino to a food laboratory for testing. SAC ¶ 37. The results suggested that Buonatavola had failed to pasteurize the cheese, which could have caused the defects that customers complained about. SAC ¶¶ 38–39 & n.4; *see also* Decl. of Richard E. Freeman, Ex. I, ECF No. 18-3.

## DISCUSSION

I. *Legal Framework*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010). Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Exhibits attached to the complaint or incorporated by reference may be considered on a motion to dismiss. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

II. *Prejudice of Allowing Amendment*

Rienzi's motion to amend is discussed at the outset because doing so will facilitate the disposition of the cross-motions. Federal Rule 15 directs courts to "freely give leave" to amend pleadings before trial "when justice so requires." Fed. R. Civ. P. 15(a)(2). Therefore, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "In gauging prejudice, [a court] consider[s], among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (internal quotation marks omitted). Additionally, "[a] proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *F5 Cap. v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017).

Buonatavola argues that it will suffer prejudice if Rienzi is allowed to amend its complaint because it would be forced to "endlessly chase a moving target." Def.'s Reply Mem. of Law in Supp. of Its Mot. to Dismiss and Opp'n to Pl.'s Cross-mot. at 15, ECF No. 19 [hereinafter Def.'s Reply]. Rienzi's proposed complaint, however,

does not move this case's target in any meaningful way. While Rienzi proposes subsuming some of its original claims as damages sought under other claims and pursuing relief under different legal theories, the gravamen of the complaint remains the same: Buonatavola agreed to sell Rienzi pecorino of a certain quality, and Rienzi suffered damages when Buonatavola tendered pecorino of an inferior quality; Buonatavola then compounded the harm by promising to repossess the pecorino and then failing to do so. In fact, Buonatavola admits that the proposed Second Amended Complaint "do[es] not add or reference any new evidence." *Id.* at 14. Under these circumstances, the proposed "amendment would [not] require [Buonatavola] to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Ruotolo*, 514 F.3d at 192 (internal quotation marks omitted); *see also Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986) (allowing amendment where "the new claims are merely variations on the original theme" of the conduct complained of and where the new proposed claims "were forecast by the original . . . allegations"); *Bryant v. Steele*, 64 F. Supp. 3d 441, 445–46 (E.D.N.Y. 2014) ("discern[ing] little, if any, prejudice . . . as a result of permitting the Plaintiff" to amend its complaint where the proposed amended complaint alleged "the same set of circumstances and facts" as the previous iteration).

6

III. *Breach of the Oral Agreement*

To prevail on a breach-of-contract claim under New York law, a plaintiff must prove: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) nonperformance by the other party, and (4) damages attributable to the breach." *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021).

Buonatavola argues that the oral agreement is unenforceable under the statute of frauds provision codified in the New York Uniform Commercial Code (N.Y.U.C.C.) because aspects of that alleged agreement—specifically the term that conditioned Rienzi's payment obligation on its successful resale of the pecorino—are not evidenced by a writing.[1] Buonatavola is incorrect. The invoice Rienzi submitted suffices to defeat a statute of frauds defense.

The N.Y.U.C.C.'s statute of frauds provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." N.Y.U.C.C. § 2-201(1); *see also Wellington Farms of Mass., Inc. v. Capital Area Food Bank*, 156 A.D.3d 662, 663

---

[1] The "affirmative defense of the Statute of Frauds is appropriately raised on a motion to dismiss." *Mercator Corp. v. Windhorst*, 159 F. Supp. 3d 463, 471 (S.D.N.Y. 2016) (internal quotation marks omitted).

7

(2d Dep't 2017). This provision "simply requir[es] 'that the writing afford a basis for believing that the offered oral evidence rests on a real transaction.'" *Bazak Int'l Corp. v. Mast Indus., Inc.*, 73 N.Y.2d 113, 120 (1989) (quoting U.C.C. § 2-201 official cmt. 1). Thus, "in order to satisfy that Statute of Frauds provision, the writing need not contain all the material terms of the agreement." *Horn Waterproofing Corp. v. Horn Constr. Co.*, 104 A.D.2d 851, 853 (2d Dep't 1984); *accord* U.C.C. § 2-201 official cmt. 1; *see also Apex Oil Co. v. Vanguard Oil & Serv. Co. Inc.*, 760 F.2d 417, 423 (2d Cir. 1985) ("[S]ection 2-201 does not require parties precisely to set forth every material term of their agreement.").[2] Rather, "there are only three 'invariable requirements' that a writing must meet. 'First, it must evidence a contract for the sale of goods; second, it must be "signed", a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity.'" *Horn Waterproofing*, 104 A.D.2d at 853 (quoting U.C.C. § 2-201 official cmt. 1).

In this case, the invoice Rienzi submitted satisfies each of these requirements. It evidences that a contract was made for the sale of pecorino, a good. It is

---

[2] In this regard, the N.Y.U.C.C.'s statute of frauds differs from the statute of frauds in New York "General Obligations Law § 5-701 wherein the writing or memorandum 'must contain expressly or by reasonable implication all the material terms of the agreement'" *Dorman v. Cohen*, 66 A.D.2d 411, 416 & n.* (1st Dep't 1979) (quoting *Morris Cohon & Co. v. Russell*, 23 N.Y.2d 569, 575 (1969)) (noting this distinction). Neither party disputes the application of the N.Y.U.C.C. to this transaction and that the provisions of that code therefore control. *See AP Propane, Inc. v. Sperbeck*, 157 A.D.2d 27, 29 (3d Dep't 1990).

authenticated by Buonatavola, the party being charged with breach. And it specifies the quantity of pecorino to be delivered—19,359 kilograms. Therefore, the statute of frauds does not bar Rienzi from suing for breach of a contract involving this sale and alleging the existence an additional material term conditioning Rienzi's payment obligation on its successful resale of the pecorino. Indeed, New York courts routinely allow parties to sue under the N.Y.U.C.C. when a contract is merely evidenced by an invoice. *See Mulitex USA, Inc. v. Marvin Knitting Mills, Inc.*, 12 A.D.3d 169, 169 (1st Dep't 2004); *Quality Packaging Supply Corp. v. R.H. Carlson Co.*, 158 A.D.2d 936, 936 (4th Dep't 1990); *B & R Textile Corp. v. Domino Textiles Inc.*, 77 A.D.2d 539, 539–40 (1st Dep't 1980).

Nevertheless, Rienzi's claim for breach of the oral agreement fails for a different reason: The N.Y.U.C.C.'s parol evidence rule prevents Rienzi from pursuing a claim regarding this transaction based on an allegation that the contract conditioned Rienzi's payment obligation on its successful resale of the pecorino.[3]

---

[3] The parol evidence rule may serve as a basis for granting a motion to dismiss under Rule 12(b)(6). *See Holloway v. King*, 161 F. App'x 122, 124 (2d Cir. 2005) (holding that "it was . . . proper for the district court to invoke the parol evidence rule to grant the Rule 12(b)(6) motion to dismiss"); *First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y*, 43 F. App'x 462, 463–64 (2d Cir. 2002) (affirming a grant of a motion to dismiss under Rule 12(b)(6) based on the application of the parol evidence rule); *cf. Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 434–37 (2013) (affirming a grant of New York state court motion to dismiss based on the application of the parol evidence rule).

Under the parol evidence rule "[t]erms . . . which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement." N.Y.U.C.C. § 2-202. Here, the invoice Rienzi submitted appears to represent "a final expression of [the parties'] agreement" and provides that Rienzi's payment was due to Buonatavola on July 26, 2016 without mentioning any conditions.[4] *Id.* Therefore, Rienzi may not allege that its responsibility to pay to Buonatavola could be delayed past July 26, 2016 if it failed to resell the pecorino, as any such provision would "contradict[]" the invoice. *Id.*

The Fourth Department came to a similar conclusion in *Battista v. Radesi*, 112 A.D.2d 42 (4th Dep't 1985). In *Battista*, the "defendant received a shipment of 1,000 cases of wine at a total price of $18,808.75" and the "invoice . . . contained the words 'net 45 days' in the box marked 'terms.'" *Id.* at 42. When sued for the balance months later, the "defendant claimed that the parties had agreed that payment would not be due until defendant's entire inventory was sold." *Id.* The invoice, as the invoice in this case, "included the names and addresses of the parties, the date, payment terms, a description and price of each of the [items] purchased, and a total price for the

---

[4] Rienzi does not allege that it ever objected to this invoice or otherwise explain—either in its complaint or its briefing—why this invoice should not be understood to reflect the parties' final agreement.

10

shipment" and thus "represented a final expression of the parties." *Id.* Under these circumstances, the Appellate Division rejected the "defendant's assertion that the parties had agreed to different terms of payment" because "[a] writing intended by the parties to be the final expression of their agreement may not be contradicted by evidence of any prior agreement." *Id.* (citing N.Y.U.C.C. § 2-202); *see also Sunkyong Am., Inc. v. Beta Sound of Music Corp.*, 199 A.D.2d 100, 101 (1st Dep't 1993) ("The parol evidence rule embodied in UCC 2-202 bars the introduction by the defendant of proof of any alleged oral agreement between the parties which would vary the terms of the plaintiff's invoices, which were the final written expression of the parties' sales agreement" (citing *Battista*, 112 A.D.2d at 42)). Therefore, Rienzi's claim for breach of the oral agreement is dismissed.

IV. *Breach of the Purchase Agreement and Implied Warranties*

In the alternative, Rienzi asserts claims for breach of contract and the implied warranty of merchantability, both based on the alleged purchase agreement. According to Rienzi, the parties entered into this agreement on the understanding that Rienzi would resell the cheese in the United States. Similar to Rienzi's claim for breach of the oral agreement, the invoice Rienzi submitted suffices to defeat any statute of frauds defense to these claims based on the alleged purchase agreement. Indeed, Buonatavola affirms that the parties made such a contract and claims that it is still owed the purchase price. Def.'s Mem. of Law in Supp. of Its Mot. to Dismiss

at 3–4, ECF No. 17-1. Rienzi alleges that Buonatavola breached this agreement when it provided pecorino that was "poor quality, non-confirming and defective," SAC ¶ 113, and thus unfit for resale. This alleged breach mirrors Rienzi's claim that Buonatavola breached the warranty of merchantability that the N.Y.U.C.C. implies in contracts for the sale of goods. Accordingly, these claims are discussed together.

Buonatavola argues that Rienzi's claims for breach of the purchase agreement and the implied warranty of merchantability must be dismissed for three independent reasons. None of these reasons, however, provide a sound basis for dismissal.

First, Buonatavola argues that Rienzi fails to allege any terms of the contract that Buonatavola allegedly breached. Not so. According to Rienzi's allegations, Buonatavola and Rienzi entered a contract whereby Rienzi would purchase a very large quantity of pecorino from Buonatavola, and both parties understood that Rienzi would then attempt to sell that pecorino in the United States. Thus, logic and the N.Y.U.C.C.'s implied warranty provisions dictate that Buonatavola implicitly warranted that the pecorino it shipped to Rienzi would be suitable for resale in at least some sense. *See* N.Y.U.C.C. §§ 2-314, 2-315. At the very least, that warranty "provide[d] for a minimal level of quality," even if it "d[id] not mean that the product [would] fulfill [the] buyer's every expectation." *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 n.4 (1995) (alterations omitted). Buonatavola protests that accepting Rienzi's allegations wound "graft onto the Invoice completely new terms," Def.'s

Reply at 6, but that argument ignores the *implied* character of the alleged warranty. And unlike the alleged contingent payment term of the oral agreement, this implied warranty does not contradict any terms in the invoice.

Here, Rienzi alleges that the pecorino was "of poor quality, non-conforming and defective" and that customers returned the product to supermarkets because of complaints about "the smell, taste and quality" of the cheese. SAC ¶ 60. The laboratory report attached to the complaint suggests that Buonatavola failed to pasteurize the pecorino, which could have caused the "bad and unpleasant smells emanating" from it. SAC ¶ 38. This is enough to plausibly allege that Buonatavola tendered cheese that Rienzi could not resell and thereby breached the contract's implied warranties.

Second, Buonatavola contends that Rienzi waived any claim it might have based on the alleged defective nature of the pecorino because Rienzi accepted Buonatavola's shipment. While Buonatavola is correct that Rienzi accepted the pecorino, it does not follow that Rienzi may not sue for the alleged nonconforming nature of the cheese.

Under the N.Y.U.C.C., "[a]cceptance of goods occurs when the buyer: (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or (b) fails to make an effective rejection . . . [after] the buyer has had a

reasonable opportunity to inspect them; or (c) does any act inconsistent with the seller's ownership." N.Y.U.C.C. § 2-606. Here, Rienzi's admission that it repackaged the pecorino under its own labeling and sold it to Wakefern to place in supermarkets establishes that Rienzi accepted the pecorino. A buyer's "resale of [goods is] inconsistent with [the seller's] 'ownership' of goods, thus constituting acceptance under UCC 2-606(1)(c)." *Gem Source Int'l, Ltd. v. Gem-Works N.S., L.L.C.*, 258 A.D.2d 373, 374 (1st Dep't 1999); *see also Sunkyong Am.*, 199 A.D.2d at 100 ("[D]efendant's conduct, in reselling the goods to its retail customers, constituted acceptance under UCC 2-606(1)(c).").

Still, "whether a buyer accepts, rejects or revokes under the N.Y.U.C.C. is not, in and of itself, dispositive regarding the buyer's claim for damages." *United States ex rel. Saunders Concrete Co. v. Tri-States Design Constr. Co.*, 899 F. Supp. 916, 922 (N.D.N.Y. 1995). The N.Y.U.C.C. specifies that "acceptance does not of itself impair any other remedy provided by this Article for non-conformity," N.Y.U.C.C. § 2-607(2), and stipulates that a "buyer [that] has accepted goods . . . may recover . . . damages for any non-conformity of tender," *id.* § 2-714(1). Thus, "where the accepted goods are claimed to be defective, the buyer 'may have a claim to recover damages for breach of warranties.'" *Sec. Chimneys Ltd. v. McDowell*, No. 92-CV-315, 1992 WL 345073, at *3 (N.D.N.Y. Nov. 16, 1992) (quoting *Paul Conte Cadillac v. C.A.R.S. Purchasing*, 126 A.D.2d 621, 623 (2d Dep't 1987)).

Third, Buonatavola asserts that Rienzi may not sue for Buonatavola's alleged breach of the purchase agreement because Rienzi did not allege that it fulfilled its obligation under that contract. *See Moreno-Godoy*, 7 F.4th at 85 (providing that "performance by the party seeking recovery" is an essential element of a breach-of-contract claim under New York law); *Comfort Inn Oceanside v. Hertz Corp.*, 2011 WL 5238658, at *3 (E.D.N.Y. Nov. 1, 2011) ("A claimant's failure to plead the performance of its own contractual obligations is fatal to a breach of contract claim even if the other requisite elements are properly pleaded.").[5] The invoice Rienzi submitted stipulates that Rienzi's payment for the pecorino was due on July 26, 2016, and Rienzi does not allege that it ever paid the amount due.

Rienzi's failure to pay, however, does not bar its claims because under the circumstances alleged in the complaint, Rienzi might not have been under any obligation to do so. Rienzi's acceptance of the pecorino would normally require it to pay the contract price. *See* N.Y.U.C.C. § 2-607(1) ("The buyer must pay at the contract rate for any goods accepted."). Rienzi's allegation that the pecorino was not properly pasteurized, however, raises the possibility that Rienzi could have revoked its acceptance and thus voided it payment obligation. As relevant here, the

---

[5] The parties do not address the issue whether this requirement applies to a buyer's claim based on the N.Y.U.C.C.'s implied warranty provisions. Even assuming that it does, however, Rienzi's alleged lack of performance would not justify dismissing its claim for the reasons discussed in this section.

N.Y.U.C.C. allows a buyer to "revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it . . . without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." N.Y.U.C.C. § 2-608(1). To properly revoke acceptance, a buyer "must notif[y] the seller" "within a reasonable time after the buyer discovers or should have discovered" the nonconformity. *Id.* § 2-608(2). Rienzi explains that the alleged defective nature of the pecorino was difficult to discover because the improperly pasteurized cheese did not appear defective until weeks after Rienzi received it. Once it discovered that the pecorino was defective, Rienzi alleges, it promptly notified Buonatavola and asked Buonatavola to repossess the pecorino. These allegations plausibly demonstrate that Rienzi properly revoked its acceptance. Therefore, Rienzi's failure to pay does not require me to dismiss its claims.

Buonatavola argues that a proper inspection upon the pecorino's arrival would have revealed any of the alleged defects and that Rienzi's attempted revocation months later could therefore not have been "within a reasonable time after [Rienzi] . . . should have discovered the [alleged defect]." *Id.* Yet "[w]hat is a reasonable time is dependent on the surrounding circumstances and is a question of fact," *Campbell v. Bradco Supply Co.*, 194 A.D.3d 143, 149 (2d Dep't 2021), and I cannot conclude

16

based on Rienzi's complaint that its alleged revocation could not plausibly have occurred within a reasonable time.

Buonatavola cites *Wilbur-Dolson Silk Co. v. William Wallach Co.*, 206 A.D. 470 (1st Dep't 1923), for the proposition that a failure to discover an allegedly latent defect is not an excuse for a buyer's failure to promptly revoke acceptance. *See* Def.'s Reply at 8–9. In *Wilbur-Dolson*, however, the uncontroverted evidence established that the buyer was under a duty to inspect the goods soon after their arrival. *See id.* at 471 (contract contained clause providing that "all shipments to be tested by customer, and if unsatisfactory [be] reject[ed] within fifteen days"). In this case, on the other hand, the pleadings and accompanying documents do not unambiguously demonstrate that Rienzi had a duty to inspect the pecorino upon its arrival. Buonatavola's reliance on *De Maria v. Renee Operating Corp.*, 282 A.D. 221 (1st Dep't 1953), fares no better. There, the court did not hold that all parties have a duty to inspect for latent defects as a matter of law. Rather, the court merely held that the "fact that . . . defects are latent should not excuse the supplier *if the jury find* that under all the circumstances a standard of care would have dictated that a duty existed to make inspection for the purpose of uncovering such latent defects." *Id.* at 222 (emphasis added)

...

V. *Fraudulent Inducement*

Rienzi claims that by promising to arrange for the return of the pecorino and failing to follow through, Buonatavola fraudulently induced it to maintain the cheese in its "valuable storage space." SAC ¶ 173. To state a common-law fraud claim like fraudulent inducement, Rienzi must allege "[1] a misrepresentation or a material omission of fact which was false and known to be false by the defendant, [2] made for the purpose of inducing the other party to rely upon it . . . [3] justifiable reliance of the other party . . . and [4] injury." *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (2016); *see also Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 369 (S.D.N.Y. 2020).

Rienzi fails to state a claim for fraudulent inducement. This claim is no more than an attempt to repackage some of the damages it contends it is owed for breach of contract into a separate cause of action. With respect to breach of contract, Rienzi claims that it is entitled to recover for incidental damages including "the receipt, transportation, care and custody of the [pecorino] that [Rienzi] rightfully rejected or revoked acceptance of," which would encompass the storage costs sought as damages for the fraudulent inducement claim. SAC ¶ 127; *see* SAC ¶¶ 172–75. Indeed, Rienzi makes the same damage demand for both claims. *See* SAC ¶¶ 139, 176. "A fraud claim that arises from the same facts as an accompanying contract claim, seeks identical damages and does not allege a breach of any duty collateral to

18

or independent of the parties' agreements is subject to dismissal as redundant of the contract claim." *Marquess v. CardFlex, Inc.*, 2021 WL 355153, at *4 (E.D.N.Y. Feb. 2, 2021) (quoting *Cronos Grp. Ltd. v. XComIP, LLC*, 156 A.D.3d 54, 62–63 (1st Dep't 2017)).

## CONCLUSION

Buonatavola's motion to dismiss is granted, and Rienzi's cross-motion for leave to amend is denied as futile, as to the causes of action for breach of oral agreement and fraudulent inducement. Buonatavola's motion to dismiss is denied, and Rienzi's cross-motion for leave to amend is granted, as to the causes of action for breach of written agreement and breach of the implied warranty of merchantability. The case is referred to the magistrate for the purpose conducting settlement discussions.

                                                   **SO ORDERED.**

                                                   *Edward R. Korman*

Brooklyn, New York                                 Edward R. Korman
October 28, 2021                                   United States District Judge