UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RIENZI & SONS, INC.,

**MEMORANDUM AND ORDER**

Plaintiff,

20-cv-5704 (ERK)(SJB)

– against –

I BUONATAVOLA SINI S.R.L.,

Defendant.

KORMAN, *J.*:

Plaintiff Rienzi & Sons, Inc. ("Rienzi") filed this lawsuit against Defendant I Buonatavola Sini S.R.L. ("Buonatavola") to recover damages allegedly caused by Buonatavola's breach of contract and breach of the implied warranty of merchantability via delivery of defective Pecorino Romano cheese (the "Pecorino"). Buonatavola now moves for summary judgment, arguing that Rienzi has failed to raise a genuine issue of fact regarding whether the Pecorino was defective upon delivery of the cheese. Moreover, Buonatavola contends that, even if the Pecorino were defective, Rienzi did not revoke its undisputed acceptance of the cheese. Buonatavola also argues that Rienzi's failure to pay Buonatavola for the Pecorino precludes both of its surviving claims. Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332.

## BACKGROUND

All facts are drawn from the parties' summary judgment papers and attached exhibits. Where contested, the facts are viewed in the light most favorable to Rienzi, the non-moving party. *See O & G Indus., Inc. v. Nat'l R.R. Passenger Corp.*, 537 F.3d 153, 159 (2d Cir. 2008).

In early 2016, Michael Rienzi, the principal owner of Rienzi, a New York corporation and provider of Italian food products, traveled to Italy to negotiate the terms of an order that Rienzi would place with Italian cheesemaker Buonatavola for approximately 20,000 kilograms of Pecorino Romano cheese. Buonatavola's Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. ("Def.'s SOF") ¶ 1, ECF No. 41-10. One of the Buonatavola representatives that Rienzi dealt with was Emiliano Sini,[1] who reports to Buonatavola's owner, Giuseppe Capuani. Def.'s SOF ¶ 5; Rienzi's Counterstatement of Undisputed Material Facts in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s SOF") ¶¶ 80–82, ECF No. 41-13.

Upon conclusion of the negotiations, Buonatavola sent Rienzi a "deferred invoice," the only writing in the record that reflects a contract between the parties.

---

[1] The Memorandum and Order on Buonatavola's motion to dismiss and Rienzi's motion to amend its complaint referred to Mr. Sini as "Massimiliano Sini." *See Rienzi & Sons, Inc. v. I Buonatavola Sini S.R.L.*, No. 20-cv-5704, 2021 WL 5013795, at *2 (E.D.N.Y. Oct. 28, 2021). However, Buonatavola's summary judgment papers refer to him as "Emiliano Sini." Def.'s SOF ¶ 5. Thus, Mr. Sini will be referred to as "Emiliano Sini."

Def.'s SOF ¶ 7; *see also Rienzi & Sons, Inc.*, 2021 WL 5013795, at *1. The invoice provides that Buonatavola sent Rienzi 19,359 kilograms of Pecorino on May 26, 2016, and that payment of €150,982.50 was due on July 26, 2016. Def.'s SOF ¶¶ 11–12; Decl. of Richard E. Freeman III ("Freeman Decl."), Ex. C at 6, ECF No. 41-17.[2] To date, Rienzi has not paid Buonatavola the €150,982.50. *See* Def.'s SOF ¶ 13; Decl. of Martin S. Krezalek ("Krezalek Decl."), Ex. 1, Michael A. Rienzi Dep. Tr. ("Rienzi Tr.") 82:23–24, 84:24–85:5, ECF No. 41-5. The Pecorino shipment comprised two lots that were separately itemized on the invoice. Def.'s SOF ¶ 8. Lot 1 (the "Lot 1 Pecorino") consisted of 7,779 kilograms of Pecorino intended for grating before resale and was priced at €7.50 per kilogram. Freeman Decl., Ex. C at 6. Lot 2 (the "Lot 2 Pecorino") consisted of 11,580 kilograms of Pecorino intended for resale in its then-present form and was priced at €8 per kilogram. *Id.*

Buonatavola packed both lots of Pecorino at its facility in Italy and affixed the labeling—which it ordered from another company and bore the Rienzi brand—to the cheese. Pl.'s SOF ¶¶ 83, 86; *see also* Krezalek Decl., Ex. 2, Emiliano Sini Dep. Tr. ("Sini Tr.") 30:18–31:13, 77:6–9, ECF No. 41-6; Freeman Decl., Ex. L at 9–10, ECF No. 41-26. The labels indicate that the cheese was produced in Sardinia from pasteurized sheep's milk. Freeman Decl., Ex. L at 9–10; *see also* Pl.'s ¶¶ SOF 88–89. The lots were then shipped by boat to the Port of Newark, New Jersey, from

---

[2] Page numbers refer to ECF pagination.

where Rienzi trucks picked up the cheese and brought it to Rienzi's warehouse in Queens, New York, in June 2016. Def.'s SOF ¶ 10; Pl.'s SOF ¶¶ 95–96. When the Pecorino arrived at the warehouse, Rienzi employees did not cut into the Pecorino. Def.'s SOF ¶¶ 16–18; Pl.'s SOF ¶¶ 97–98. They did, however, visually inspect a sample of the cheese to check that it looked clean and lacked mold. Pl.'s SOF ¶ 97. Through this visual inspection, Rienzi determined there were no apparent defects— or bad odor—with the Pecorino. Def.'s SOF ¶ 18; Pl.'s SOF ¶ 98. The parties dispute whether the "usual inspection protocol" would have required Rienzi to cut into a sample of the cheese to assess its quality. Def.'s SOF ¶ 16; Pl.'s SOF ¶ 16.

Rienzi packed the Pecorino under its own brand name, and, in June and July 2016, sold and delivered the Lot 2 Pecorino in refrigerated trucks to Wakefern, a retailer-owned cooperative comprising 50 member companies, including ShopRite. Def.'s SOF ¶¶ 9, 20–21; Pl.'s SOF ¶ 99. Wakefern then placed the cheese for sale in various ShopRite supermarkets, where ShopRite cut and repackaged some of the cheese. Def.'s SOF ¶ 26; Pl.'s SOF ¶¶ 99–100. About a month later, in August, customers began to complain that the cheese "smelled bad" and was of "poor quality," and Rienzi was forced to issue credits to the ShopRite stores. Def.'s SOF ¶¶ 27–28, 38; Pl.'s SOF ¶ 101. After Wakefern informed Rienzi of the customer complaints, Rienzi sent employees to ShopRite to investigate the complaints and retrieve a sample of the Pecorino. Pl.'s SOF ¶ 102. Michael Rienzi tasted the sample

4

and immediately noticed the cheese smelled and tasted bad. Def.'s SOF ¶¶ 33–34. Also in August, Wakefern demanded that Rienzi accept return of the entirety of the Lot 2 Pecorino and refund Wakefern its purchase price. Pl.'s SOF ¶¶ 105–06; Def.'s SOF ¶ 31. Rienzi complied. Pl.'s SOF ¶¶ 105–06.

While these events were transpiring, Rienzi informed Buonatavola of "the low quality" of the Lot 2 Pecorino and that Rienzi would need to return the cheese. Def.'s SOF ¶ 42; Pl.'s SOF ¶ 107. Sini visited Rienzi's warehouse in mid-2017 to inspect the Pecorino, which he claimed did not smell "that bad." Def.'s SOF ¶ 44; Pl.'s SOF ¶¶ 111, 113–14. Nonetheless, Sini told Rienzi he would inquire whether a representative of Buonatavola's importer in the United States—Pierluigi Sini, Emiliano's stepbrother—would take the cheese from Rienzi's warehouse. Def.'s SOF ¶ 57; Pl.'s SOF ¶¶ 111, 113, 119. Rienzi retained the Pecorino in its freezers in anticipation of Buonatavola organizing a return, but Buonatavola ultimately was never able to find a buyer for the Pecorino. Pl.'s SOF ¶¶ 121, 123–25, 127; Def.'s SOF ¶ 54. In approximately February 2019, Buonatavola directed Rienzi to send a sample of the Pecorino to a potential buyer, who declined to buy the cheese. Pl.'s SOF ¶¶ 126, 128.

In June 2020, Rienzi sent the Lot 2 Pecorino to a food laboratory for testing. Pl.'s SOF ¶¶ 115–16. The laboratory results indicated the Pecorino "was most likely not made using pasteurized milk." *Id.* ¶ 116; Freeman Decl., Ex. K at 3, ECF No.

5

41-25. The results also stated that the fat of the Pecorino could have been exposed to "oxidation by oxygen in the air, which can make the cheese become rancid" and thus could have caused the bad smell customers complained about. Pl.'s SOF ¶ 116; Freeman Decl., Ex. K at 3. To date, the Lot 2 Pecorino remains in Rienzi's warehouse. *See* Def.'s SOF ¶ 59; Rienzi Tr. 141:1–10, 142:10–16.

After Emiliano Sini left Rienzi's warehouse and returned to Italy, Rienzi cut into the Lot 1 Pecorino—which had not yet left the warehouse—to assess its quality and process it into wedges. Rienzi Tr. 75:9–76:24, 88:7–11. Rienzi determined that the Lot 1 Pecorino was defective because it was "too fresh" in that it contained excess moisture, which Rienzi measured with an unspecified "machine." *See* Def.'s SOF ¶ 64; Rienzi Tr. 74:1–25, 91:5–20. Unlike the Lot 2 Pecorino, Rienzi never sent the Lot 1 Pecorino for laboratory testing. Def.'s SOF ¶ 65. Rienzi claimed that the excess moisture of the Lot 1 Pecorino was due to its having been aged only ninety days, rather than the requisite seven to eight months. Rienzi Tr. 74:15–19. Some weeks after Sini returned to Italy, Rienzi informed Sini of the problem with the Lot 1 Pecorino and asked him to "[t]ake the whole container"—both lots of Pecorino—back. *Id.* 93:4–94:24.

Buonatavola apparently did not retrieve the Lot 1 Pecorino; instead, Rienzi dried out this Pecorino, grated and mixed it with other grated cheese and then sold most of it to Wakefern and Stop & Shop. *See* Def.'s SOF ¶¶ 67–68; Rienzi Tr.

132:23–137:13. Rienzi claimed that in the process of drying the Lot 1 Pecorino, 20–30% of it was wasted. *See* Def.'s SOF ¶ 68; Rienzi Tr. 133:22–134:2.

On August 28, 2020, Rienzi filed this action in the Supreme Court of the State of New York, Queens County, alleging breach of contract, damage to business reputation, lost profits, and incidental/consequential damages. State Court Compl., ECF No. 1-2. Buonatavola removed the action on November 23, 2020, based on diversity jurisdiction. Notice of Removal at 2, ECF No. 1. Rienzi thereafter filed its First Amended Complaint ("FAC") on February 3, 2021, alleging breach of oral contract, damage to business reputation, lost profits, incidental/consequential damages, and, in the alternative, breach of written agreement. *See* FAC ¶¶ 33–118, ECF No. 13.

Buonatavola moved to dismiss the FAC on June 16, 2021. Buonatavola's Mem. of Law in Supp. of Its Mot. to Dismiss, ECF No. 17. Rienzi cross-moved seeking leave to file a Second Amended Complaint ("SAC"). Rienzi's Mem. of Law in Supp. of Its Cross-Mot. to Amend Its Compl., ECF No. 18. On October 28, 2021, I issued an order granting in part and denying in part Buonatavola's motion to dismiss and granting in part and denying in part Rienzi's motion to amend. *See Rienzi & Sons, Inc.*, 2021 WL 5013795, at *1, *8. The SAC asserted causes of action for breach of written agreement and breach of implied warranty of merchantability. SAC ¶¶ 50–114, ECF No. 25.

7

## LEGAL STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party has met its burden of establishing that there are no genuine issues of material fact, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (citation and internal quotation marks omitted).

## DISCUSSION

### I.    Choice of Law

Because jurisdiction is premised on diversity and the parties have presented arguments on the law of the forum state—New York—New York law will apply to the parties' dispute. *See Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999) ("Federal courts exercising diversity jurisdiction must . . . determine which state's substantive law applies."); *Tehran-Berkeley Civil & Envtl. Eng'rs v.*

*Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989) (finding implied consent to use forum state's law where parties' briefs rely on New York law).

## II.  Rienzi's Motion to Strike

### A. Violation of Federal Rule of Civil Procedure 26

As a preliminary matter, Rienzi challenges the admissibility of the entire declaration of Claudio Bucci—an outside consultant to Buonatavola—and its attached exhibit regarding the process by which Buonatavola produces Pecorino cheese. Pl.'s SOF ¶ 71; *see also* Decl. of Claudio Bucci ("Bucci Decl."), ECF No. 39-1. This objection will be construed as a motion to strike the Bucci Declaration and its attached exhibit. "Because a decision on the motion to strike may affect [the movant's] ability to prevail on summary judgment, it is appropriate to consider the [m]otion to [s]trike prior to the [m]otion for [s]ummary [j]udgment." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 213 (S.D.N.Y. 2007) (first alteration in original) (citation and internal quotation marks omitted), *aff'd*, 354 F. App'x 496 (2d Cir. 2009).

Bucci's declaration indicates that he serves as a "Preventive Controls Qualified Individual," a "Plant Safety Manager," and a "Quality assurance manager" for Buonatavola. Bucci Decl. at 1. In this role, Bucci claims to be familiar with Buonatavola's process for making Pecorino. *Id.* According to Bucci, Buonatavola subjects the milk that is used to make Pecorino to thermization, which "consists [of]

heating raw milk for 15 seconds at a temperature not exceeding 68 °C," several degrees below the heat treatment involved in pasteurization. *Id.* at 1–2. Bucci asserts that Buonatavola's use of thermization—rather than pasteurization—complies with the requirements of Italian law. *Id.* Attached to the Bucci Declaration, as an exhibit, is an Italian-language copy of "the Pecorino Romano DOP production specifications issued by the Italian Ministry of Agriculture." *Id.* at 1 & Ex. A.

Rienzi argues that the Bucci Declaration and accompanying exhibit are inadmissible and should not be considered because, in pertinent part: (1) the exhibit is written entirely in Italian—without a certified English translation—and was not introduced in discovery; and (2) Bucci was never disclosed on any witness lists, and his declaration is an attempt to introduce expert testimony after discovery closed. Pl.'s SOF ¶ 71. Buonatavola counters that Bucci "is testifying as a fact witness as to how I Buonatavola produces its cheese, and to the fact that the process had been verified on site by an FDA Auditor in recent years." Buonatavola's Reply Mem. of Law in Supp. of Its Mot. for Summ. J. ("Def.'s Reply") at 8, ECF No. 41-31.

First, it is a "well-established rule that a document[] in a foreign language is generally inadmissible unless accompanied by a certified English translation." *Chen v. Wai? Café, Inc.*, No. 10 Civ. 7254, 2016 WL 722185, at *6 n.5 (S.D.N.Y. Feb. 19, 2016); *see also Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 & n.9 (S.D.N.Y. 2016) (finding that foreign-language documents attached to declarations,

even if authenticated, "cannot be reviewed or relied on by the Court . . . unless they are accompanied by certified translations into English"). Thus, the Italian-language exhibit to the Bucci Declaration is inadmissible and will not be considered for the purpose of Buonatavola's motion for summary judgment.

Second, turning to the Bucci Declaration, it must be determined whether Buonatavola violated Federal Rule of Civil Procedure ("Rule") 26 by failing to disclose Bucci before the close of discovery. Under Rule 26, a party, without awaiting a discovery request, must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims and defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Under this Rule "'[u]se' includes any use 'to support a motion, or at trial.'" *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 159 (S.D.N.Y. 2003) (alteration omitted) (quoting Fed. R. Civ. P. 26(a)(1)(A) Advisory Committee's Note to 2000 Amendment).

If a party intends to rely on expert testimony, Rule 26(a)(2)(A) requires the party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702." Fed. R. Civ. P. 26(a)(2)(A). If an expert witness is "retained or specially employed to provide expert testimony in the case," the witness must also provide a report including the information set forth in Rule 26(a)(2)(B). Fed. R. Civ. P. 26(a)(2)(B); *see also Bank of China v. NBM*

*LLC*, 359 F.3d 171, 182 n.13 (2d Cir. 2004). Witnesses not retained to provide expert testimony are not required to submit a report but must disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702," and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C); *see also Bank of China*, 359 F.3d at 182 n.13.

Here, the deadline to complete fact discovery was July 11, 2022, upon Rienzi's fourth motion to extend time to complete discovery. *See* May 15, 2022 ECF Order. The deadline to make initial expert disclosures and reports was October 3, 2022, and all discovery was to be completed by October 20, 2022. *See* Sept. 1, 2022 Minute Entry & Order. The Bucci Declaration was then executed on November 8, 2022. Bucci Decl. at 4. Aside from the Bucci Declaration, the only other time Buonatavola disclosed Bucci was in response to Rienzi's first set of interrogatories. *See* Freeman Decl., Ex. M, ECF No. 41-27. There, Rienzi requested information regarding Buonatavola's "quality control process." *Id.* at 5. Buonatavola, in relevant part, replied that it "employs a team of quality control staff, including Claudio Bucci" and provided Bucci's date of birth and address. *Id.*

"Many courts in this Circuit (including this one) have held that the mere mention of a name in a deposition of interrogatory response is insufficient to satisfy Rule 26(a)(1)(A)(i)." *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 72 (E.D.N.Y. 2012) (collecting cases). "Rather, to satisfy Rule 26, parties must make an

unequivocal statement that they may rely upon an individual on a motion or at trial." *Id.* at 73. "The purpose of this disclosure is to alert an opposing party of the need to take discovery of the named witness." *Pal v. N.Y. Univ.*, No. 06 Civ. 5892, 2008 WL 2627614, at \*4 (S.D.N.Y. June 30, 2008).

Under these standards, Buonatavola violated Rule 26(a)(1)(A) by failing to identify Bucci to Rienzi before the close of discovery. "The case law makes clear that, even if [Plaintiff was] aware that [this] individual[] existed, that awareness did not absolve [Defendant] of [its] Rule 26(a)(1)(A) disclosure obligation, which 'is fulfilled only if [Defendant] informed [Plaintiff] that [it] might call the witness[] in support of [its] claims or defenses.'" *Leong v. 127 Glen Head Inc.*, No. CV 13-5528, 2016 WL 845325, at \*4 (E.D.N.Y. Mar. 2, 2016) (quoting *Pal*, 2008 WL 2627614, at \*4). Buonatavola does not contest that it failed to identify Bucci on any witness lists before the close of discovery. *See* Def.'s Reply at 8. Instead, Buonatavola only identified Bucci in its interrogatory response, which "simply did not provide [Plaintiff] with fair warning of the need to take discovery from [him]." *Pal*, 2008 WL 2627614, at \*4. Nor does Buonatavola explain its failure to comply with Rule 26(a)(1)(A), except to state that Bucci is testifying as a fact witness with familiarity with the company's process for producing cheese. *See* Def.'s Reply at 8. This explanation does not absolve Buonatavola from complying with Rule 26(a)(1)(A).

Buonatavola also violated Rule 26(a)(2)(A). While Buonatavola asserts that Bucci is testifying as a fact witness, his declaration does not indicate that the information is "based entirely on [his] perceptions" or his first-hand investigation of Buonatavola's cheese-making process. *Bank of China*, 359 F.3d at 181; *see also United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002) ("[A] lay opinion must be rationally based on the perception of the witness. This requirement is the familiar requirement of first-hand knowledge or observation." (citation and internal quotation marks omitted)); *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (explaining that lay testimony under Federal Rule of Evidence 701 should be based on "reasoning processes familiar to the average person in everyday life" and not "in any way" on "scientific, technical, or other specialized knowledge" (citations and internal quotation marks omitted)).

Rather, the Bucci Declaration lays out the technical details of Buonatavola's cheese-making process, which appears to draw on Bucci's "technical" or "other specialized knowledge." Fed. R. Evid. 702(a)*;see also Bank of China*, 359 F.3d at 181–82 (holding admission of testimony under Federal Rule of Evidence 701 was erroneous, where testimony reflected witness's specialized international banking experience). This suggests Buonatavola sought to proffer Bucci as "an expert in lay witness clothing," potentially evading the reliability requirements of Federal Rule of

14

Evidence 702. Fed. R. Evid. 701 Advisory Committee's Note to 2000 Amendment. Buonatavola was required to disclose Bucci as an expert under Rule 26(a)(2)(A).

### B. Preclusion Sanction Under Rule 37(c)(1)

Because Buonatavola failed to comply with Rules 26(a)(1)(A) and 26(a)(2)(A), it then must be determined whether Buonatavola's non-compliance was neither substantially justified nor harmless under Rule 37(c) to warrant a sanction of preclusion. Under Rule 37, a party that fails to disclose information or identify a witness as required by Rule 26(a) "is not allowed to use that information or witness to supply evidence on the motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (summary order) (quoting *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)). Nevertheless, preclusion is a discretionary remedy, even if "the trial court finds that there is no substantial justification and the failure to disclose is not harmless." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006). Moreover, "[p]reclusion of evidence is generally a disfavored action." *Am. Stock Exch. LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

Buonatavola's failure to disclose Bucci to Rienzi before the close of discovery was not substantially justified under Rule 37(c). Substantial justification may be

demonstrated where there is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request" or if "there exists a genuine dispute concerning compliance." *Henrietta D. v. Giuliani*, No. 95 CV 0641, 2001 WL 1602114, at *5 (E.D.N.Y. Dec. 11, 2001) (citation and internal quotation marks omitted). Buonatavola does not contest Rienzi's assertion that Buonatavola failed to disclose Bucci; nor does Buonatavola explain its failure to do so, as it was unquestionably required to do by Rule 26. The Magistrate Judge assigned to this case granted multiple extensions to discovery deadlines. *See* ECF Orders dated October 12, 2021; February 22, 2022; May 15, 2022; September 1, 2022. Yet Buonatavola still did not disclose Bucci other than to mention him and some identifying information in response to an interrogatory that asked about Buonatavola's "quality control process." Freeman Decl., Ex. M at 5.

However, Buonatavola's failure to disclose Bucci was harmless. "An omission or delay in disclosure is harmless where there is 'an absence of prejudice' to the offended party." *Lujan*, 284 F.R.D. at 68 (quoting *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012)). Rienzi failed to depose Bucci when it could have done so, and the Bucci Declaration's main point—that Buonatavola uses thermization rather than pasteurization—is duplicative of other evidence in the record. *See, e.g.*, *Preuss v.*

16

*Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 177 (S.D.N.Y. 2013) (declining to preclude evidence based on undisclosed affiants because plaintiffs were not prejudiced where "the identities and scope of knowledge of these . . . affiants were known to [p]laintiffs, they were free to depose the affiants, and the affirmations are largely duplicative of other evidence in the record").

First, the Bucci Declaration was executed on November 8, 2022—only nineteen days after the close of all discovery, and Rienzi presumably became aware of it on December 8, 2022, when Buonatavola filed its motion for summary judgment. *See* Buonatavola's Mem. of Law in Supp. of Its Mot. for Summ. J. ("Mot."), ECF No. 39-9. But Rienzi "did not timely move to . . . reopen discovery after the belated disclosures but prior to [serving] its [Memorandum of Law in Opposition to the] motion for summary judgment," on January 10, 2023. *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S de R L de C.V.*, 627 F. Supp. 3d 408, 417 (S.D.N.Y. 2022); *see also* Rienzi's Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 41-12. Second, apart from the Bucci Declaration, Buonatavola has pointed to Food and Drug Administration ("FDA") regulation indicating that the milk from which Pecorino cheese is made "*may* be pasteurized or clarified or both, and which *may be warmed*." Mot. at 21 (quoting

21 C.F.R. § 133.183(b)) (emphasis added).[3] Although 21 C.F.R. § 133.183 does not use the term "thermization," this regulation makes clear that Pecorino does not *need* to be pasteurized. Moreover, Sini has testified that Buonatavola uses thermization. *See* Sini Tr. 25:1–16. Both pieces of evidence are therefore duplicative of the main import of the Bucci Declaration.

Thus, preclusion of the Bucci Declaration—excepting its attachment—is not warranted. If Rienzi wishes, it may depose Bucci between now and trial, with Buonatavola bearing the costs other than attorney's fees. *See* Rule 37(c)(1)(A).

### III.   Buonatavola's Motion for Summary Judgment

#### A. Breach of Contract

Buonatavola argues Rienzi's breach of contract claim fails because Rienzi has yet to pay for the Pecorino delivery that Rienzi accepted. Mot. at 24. Buonatavola further disputes Rienzi's alleged damages. *Id.* at 28. Rienzi contends that it properly revoked its earlier acceptance of the Pecorino and thus was not required to pay Buonatavola. Pl.'s Opp'n at 10. Moreover, Rienzi argues it suffered incidental and consequential damages as well as lost profits. *Id.* at 13.

To succeed on a breach of contract claim under New York law, the plaintiff must prove: "(1) the existence of a contract, (2) performance by the party seeking

---

[3] Milk clarification is a process by which fat is removed from milk. *See* 21 C.F.R. § 133.3(a); 133.183(c)(1).

recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC*, 156 F. App'x 349, 350–51 (2d Cir. 2005).

Under New York's Uniform Commercial Code (the "N.Y. U.C.C."), "[a]cceptance of goods occurs when the buyer: (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or (b) fails to make an effective rejection . . . [after] the buyer has had a reasonable opportunity to inspect them; or (c) does any act inconsistent with the seller's ownership." N.Y. U.C.C. § 2-606(1). Once a buyer has accepted goods, it "must pay at the contract price for any goods accepted." N.Y. U.C.C. § 2-607(1).

There is no dispute that Rienzi initially accepted the Pecorino because it "admi[tted] that it repackaged the pecorino under its own labeling and sold it to Wakefern to place in supermarkets[, which] establishes that Rienzi accepted the pecorino." *Rienzi & Sons, Inc.*, 2021 WL 5013795, at *5. A buyer's "resale of [goods is] inconsistent with [the seller's] 'ownership' of the goods, thus constituting acceptance under UCC [§] 2-606(1)(c)." *Gem Source Int'l, Ltd. v. Gem-Works N.S., L.L.C.*, 685 N.Y.S.2d 682, 682 (N.Y. App. Div. 1st Dep't 1999). Rienzi also does not dispute that it has not paid Buonatavola the contract price for the Pecorino. *See* Def.'s SOF ¶ 13.

However, Rienzi claims that it properly revoked its acceptance of the Pecorino, which would have voided its payment obligation. Pl.'s Opp'n at 10. Rienzi contends that it "immediately" told Buonatavola of the customer complaints Wakefern had relayed to Rienzi in August 2016 and that Rienzi needed to return the cheese. *Id.* at 11. Rienzi further maintains that it could not have revoked the Pecorino—specifically the Lot 2 Pecorino—before then because the lack of pasteurization was a latent defect. *Id.* at 10.

A buyer may revoke his or her acceptance "only if the acceptance was made prior to the discovery of a latent defect, and the revocation occurs within a reasonable time after plaintiff discovered said defect and before any substantial change in the condition of the goods." *Republic Corp. v. Procedyne Corp.*, 401 F. Supp. 1061, 1070 (S.D.N.Y. 1975) (citing N.Y. U.C.C. § 2-608). To effectively revoke acceptance, "the buyer must unequivocally communicate his intent to the seller." *Ask Techs. Inc. v. Cablescope, Inc.*, No. 1 Civ. 1838, 2003 WL 22400201, at *3 (S.D.N.Y. Oct. 20, 2003). A buyer's "mere complaint about the goods does not constitute a clear and unequivocal act of rejection." *Maggio Importato v. Cimitron Inc.*, 592 N.Y.S.2d 325, 326 (N.Y. App. Div. 1st Dep't 1993). A buyer must also show that if he did not know of the non-conformity at the time of acceptance, the acceptance was "induced either by the difficulty of discover[ing]" the non-conformity "or by the seller's assurances." N.Y. U.C.C. § 2-608(1)(b).

Under New York law, latent defects are those that are not "discoverable upon a reasonable inspection." *Gairy v. 3900 Harper Ave., LLC*, 45 N.Y.S.3d 564, 565 (N.Y. App. Div. 2d Dep't 2017). While "[a] retailer need not ordinarily inspect merchandise for latent defects," it has "a duty to inspect and discover those defects that are discoverable by reasonable physical inspection." *Topliff v. Wal-Mart Stores East LP*, No. 6:04-CV-0297, 2007 WL 911891, at *44 (N.D.N.Y. Mar. 22, 2007) (quoting 6-232 *Warren's Negligence in the New York Courts* § 232.02[2][e] (2005)).

***Lot 1 Pecorino***. Here, Rienzi does not dispute Buonatavola's argument that Rienzi has provided no specific evidence to corroborate Michael Rienzi's lay testimony that an unspecified "machine" of Rienzi's determined that the Lot 1 Pecorino had a latent defect of excess moisture. Nor does Rienzi dispute that it did not revoke its acceptance of the Lot 1 Pecorino. "A party abandons a claim in the context of a summary judgment motion when she does not respond to arguments concerning that claim." *Bryant v. Steele*, 462 F. Supp. 3d 249, 270 (E.D.N.Y. May 22, 2020). Even if Rienzi had responded to Buonatavola's argument, Rienzi did not revoke its acceptance of this lot before substantially changing the condition of the cheese because Rienzi grated and mixed it with other cheese and sold it. Thus, summary judgment is granted to Buonatavola as to Rienzi's breach of contract claim pertaining to the Lot 1 Pecorino.

*Lot 2 Pecorino*. Rienzi only visually inspected the Lot 2 Pecorino upon delivery, in June 2016, before concluding that it looked clean and lacked any apparent defects. Rienzi then told Buonatavola, in August 2016, that ShopRite customers had complained about the quality of the Lot 2 Pecorino and that Rienzi would need to return it to Buonatavola. But Rienzi held onto the cheese while Buonatavola sought to find an alternative buyer for it. Although Rienzi claims that in mid-to-late 2017, it asked Buonatavola to take back the "whole container" of cheese, as late as 2019, Rienzi sent a sample of the cheese to a potential buyer, who declined to purchase it, and then sent it to a laboratory for quality testing.

Genuine issues of fact remain concerning whether Rienzi conducted a reasonable physical inspection of the Lot 2 Pecorino upon delivery and whether the inspection could have revealed any latent defect tied to oxidation or a lack of pasteurization. Moreover, questions of fact remain over whether Rienzi's attempted revocation of the cheese in August 2016 and again in mid-to-late 2017 was effective, unequivocal, and "within a reasonable time after [Rienzi] . . . should have discovered the [alleged defect]." N.Y. U.C.C. § 2-608(2). "Timely notification" under the New York U.C.C. "is governed by the standard of reasonableness and is a question of fact." *Cuba Cheese, Inc. v. Aurora Valley Meats*, 494 N.Y.S.2d 571, 572 (N.Y. App. Div. 4th Dep't 1985). Thus, Buonatavola is not entitled to summary judgment as to the breach of contract claim for the Lot 2 Pecorino.

## B. Breach of Implied Warranty of Merchantability

Buonatavola argues that Rienzi's claim for breach of implied warranty of merchantability should fail because Rienzi has not shown that the Pecorino was defective at the time of delivery. Mot. at 22. Buonatavola maintains that the process by which it makes the Pecorino—using thermization, rather than pasteurization—does not render the cheese non-conforming. *Id.* at 20–21. Indeed, Buonatavola points to FDA regulation indicating that the milk from which Pecorino is made "*may* be pasteurized or clarified or both, and which may be warmed." *Id.* at 15 (quoting 21 C.F.R. § 133.183(b)) (emphasis added). In addition, Buonatavola contends that, even if the Pecorino were defective, the defect was not latent because Rienzi admitted that it did not have difficulty discovering the poor quality of the cheese once it cut into it. *Id.* at 27. Rienzi counters that the Pecorino was defective because the labels indicated the cheese was pasteurized and produced in Sardinia, even though the laboratory test and Buonatavola's representations respectively indicate the cheese was unpasteurized and produced in Lazio, Italy. Pl.'s Opp'n at 6, 9.[4]

_____

[4] In the SAC, Rienzi does not allege Buonatavola's breach of implied warranty of merchantability arose from the non-conformity of the Pecorino's labels. *See* SAC ¶¶ 38–39, 41, 64, 101, 103. "An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (summary order) (citation and internal quotation marks omitted); *see also Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (declining to reach merits of argument raised for first time in opposition to summary judgment). Thus, it is unnecessary to address Rienzi's argument as to the alleged non-conformity of the labels.

Under New York's U.C.C., "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1). The standard of merchantability requires that the goods be "fit for the ordinary purposes for which such goods are used." *Id.* § 2-314(2)(c). To meet this standard, the goods need only be of "a minimal level of quality." *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 n.4 (N.Y. 1995) (citation and internal quotation marks omitted). "A seller of food products . . . is bound by the implied warranty that foods sold are fit for human consumption and therefore merchantable." *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020).

To establish a breach of the implied warranty of merchantability, the plaintiff must show that: (1) "the product was defectively designed or manufactured"; (2) "the defect existed when the manufacturer delivered it to the purchaser or user"; and (3) "the defect was the proximate cause of the injury." *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 895 (E.D.N.Y. 2018). This "inquiry focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners," and "recovery may be had upon a showing that the product was not minimally safe for its expected purpose." *Denny*, 87 N.Y.2d at 258–59.

Here, Rienzi has offered no evidence to raise a genuine issue of fact over whether the Pecorino necessarily was defectively manufactured by not being

24

pasteurized. Even if the laboratory report shows that the milk used to *make* the Pecorino likely was not pasteurized—which is probative of the state of the cheese at the time of delivery in June 2016—Rienzi has not put forth any evidence rebutting the fact that FDA regulation plainly does not *require* Pecorino to be pasteurized. *See* 21 C.F.R. § 133.183(b).

Moreover, Rienzi has not shown that any bad smell caused by oxidation existed at the time of delivery and did not develop during the intervening four years after delivery. Rienzi became aware of ShopRite customer complaints that the cheese smelled bad only in August 2016—approximately two months after delivery—by which time Rienzi had shipped the cheese to Wakefern-ShopRite, which stored, cut, and repackaged the cheese, and sold it to customers. While the laboratory report indicated that the bad smell could have been due to oxidation and high free fatty acid content, it is undisputed that Rienzi did not obtain these results until 2020—approximately four years after the cheese left Buonatavola's possession, was delivered, and prompted the ShopRite customers' complaints.

Given that Rienzi has not provided specific facts showing that a lack of pasteurization necessarily rendered the Pecorino defectively manufactured and that oxidation made the cheese rancid by the time of delivery, it is unnecessary to address whether the alleged defects proximately caused damage to Rienzi. Thus, summary

judgment is granted to Buonatavola as to Rienzi's claim for breach of implied warranty of merchantability.

## **CONCLUSION**

Rienzi's motion to strike Exhibit A of the Bucci Declaration is granted. The motion to strike the Bucci Declaration is denied. Buonatavola's motion for summary judgment is granted as to Rienzi's breach of contract claim pertaining to the Lot 1 Pecorino and as to Rienzi's breach of implied warranty of merchantability claim. The motion is denied as to Rienzi's breach of contract claim regarding the Lot 2 Pecorino.

**SO ORDERED.**

Brooklyn, New York              *Edward R. Korman*
August 27, 2024                   Edward R. Korman
                                 United States District Judge